# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re SUBPOENAS to Robert Brainard, Ryan Del Re, Greg Denbeaux, and the Research Foundation for the State University of New York | CASE NO. __1:25-mc-8 (DNH/PJE)__<br><br>(Underlying Case Pending in U.S. District Court for the District of Delaware, Civil Action No. 1:22-cv-01359-CJB) |
| LAM RESEARCH CORP.,<br><br>                Plaintiff,<br><br>     v.<br><br>ROBERT BRAINARD, RYAN DEL RE, GREG DENBEAUX, and THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK,<br><br>                Defendants. | |

**<u>LAM RESEARCH CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION AND TESTIMONY FROM ROBERT BRAINARD, RYAN DEL RE, GREG DENBEAUX, AND THE RESEARCH FOUNDATION FOR THE STATE UNIVERISTY OF NEW YORK</u>**

**TABLE OF CONTENTS**

                                                                                              **Page**

I.      PRELIMINARY STATEMENT ............................................................................1

II.     FACTUAL BACKGROUND .................................................................................2

III.    LEGAL STANDARD.............................................................................................5

IV.    ARGUMENT..........................................................................................................6

        A.     The Discovery Sought By Lam Is Highly Relevant To Its Defenses And
                Counterclaims Of Ownership, Inventorship, And Indemnity..................................6

        B.     Lam Has Taken Reasonable Steps To Avoid Imposing Undue Burden Or
                Expense On The Witnesses.......................................................................................8

        C.     The Subpoenas Do Not Impose Undue Burden Or Expense On The
                Witnesses ...............................................................................................................10

        D.     The Witnesses' Failure To Comply With The Subpoenas Is Highly
                Prejudicial To Lam .................................................................................................12

V.      CONCLUSION.....................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cross v. Donahoe*,
  No. 3:09-CV-1293, 2012 WL 4911720 (N.D.N.Y. Oct. 15, 2012) ............................................5

*Malibu Media, LLC v. Doe*,
  No. 15-CV-3147 (AJN), 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) .................................4

*Rsch. Found. for State Univ. of New York v. Inpria Corp.*,
  No. 1:24-CV-120 (BKS/ML), 2025 WL 472680 (N.D.N.Y. Feb. 12, 2025) ............................3

*Westernbank Puerto Rico v. Kachkar*,
  No. 07-1606, 2009 WL 856392 (S.D.N.Y. Mar. 27, 2009) ........................................................5

**RULES**

Fed. R. Civ. P.
  26(b)(1) ................................................................................................................................4, 11
  26(b)(2)(C)(i) ..............................................................................................................................5
  30(a)(1) .......................................................................................................................................5
  45(a)(1)(A)(iii) ............................................................................................................................5
  45(d)(2)(B)(i) ..............................................................................................................................5

**I.  PRELIMINARY STATEMENT**

This Court should enforce Lam Research Corp.'s ("Lam's") subpoenas *duces tecum* and *ad testificandum* Lam served on Dr. Brainard, Dr. Denbeaux, Mr. Del Re, and the Research Foundation for the State University of New York ("SUNY").  There is no dispute that the documents and testimony Lam seeks from Dr. Brainard, Dr. Denbeaux, Mr. Del Re, and SUNY (collectively, "the Witnesses") are highly relevant to Lam's defenses and counterclaims related to ownership, inventorship, and indemnity in *Inpria Corp. v. Lam Research Corp.*, C.A. No. 22-1359-CJB (D. Del.) and proportional to the needs of the case.

Dr. Brainard led a research team at SUNY that came up with the inventions in the patents asserted by Inpria Corp. ("Inpria") against Lam in the Delaware case.  In a separate case, SUNY alleges exactly that.  But Inpria, the plaintiff in the underlying Delaware case, has taken credit for the inventions and asserts that Lam infringes these patents.  Lam's ownership, inventorship, and indemnity defenses and counterclaims are dispositive of the entirety of the Delaware case, making the discovery sought from the Witnesses critical to the case.

Lam has collaborated with the Witnesses and their counsel, as well as Inpria, to find a compromise that would avoid motion practice, but that has proved impossible.  While Lam has made every accommodation, Inpria and SUNY refuse to change their positions.  Lam cannot wait any longer for this key discovery because the close of fact discovery is fast approaching in the Delaware case, and non-compliance with Lam's subpoenas would be highly prejudicial to Lam. Accordingly, Lam respectfully requests that this Court compel the Witnesses to comply with the subpoenas by appearing for depositions no later than July 18, 2025, and producing their documents at least 14 days before the depositions.

## II.    FACTUAL BACKGROUND

On October 14, 2022, Inpria sued Lam in the District of Delaware, ultimately alleging infringement of 129 claims across eight patents ("Asserted Patents") in its Second Amended Complaint. Ex. 1 (*Inpria Corp. v. Lam Research Corp.*, C.A. No. 22-1359-CJB, D.I. 172 (D. Del.)). On September 17, 2024, Lam answered Inpria's Second Amended Complaint asserting defenses and counterclaims based on ownership, inventorship, and indemnity. Ex. 2 at 22 (Eleventh and Thirteenth Defenses), Countercls. at ¶¶ 47-86, 136-224, 239-246, 266-284.

Lam alleges that all eight Asserted Patents were invented (or at least co-invented) by researchers from SUNY, including the Witnesses. *Id.*, Countercls. at ¶¶ 47-86, 136-224, 239-246, 266-284. Further, Lam alleges that SUNY also owns (or at least co-owns) all of the Asserted Patents based on the terms of a 2015 Research Agreement between Inpria and SUNY because the inventions claimed in the Asserted Patents originate from SUNY's research, including research by the Witnesses. *Id.* at 22 (Eleventh Defense), Countercls. at ¶¶ 136-224, 266-284. In addition, Lam alleges that under the terms of the same 2015 Research Agreement Inpria must indemnify Lam. *Id.* at 22 (Thirteenth Defense), Countercls. at ¶¶ 266-284. If proven, any one of these defenses would end the Delaware case.

Lam's defenses are no surprise to the Witnesses. Separate from Inpria's case against Lam in Delaware, SUNY sued Inpria in this Court, similarly alleging that SUNY researchers (including Dr. Brainard and Mr. Del Re) are co-inventors of the Asserted Patents and that SUNY is at least a co-owner of them. Ex. 3 (*The Research Foundation for the State Univ. of New York v. Inpria Corp.*, C.A. No. 1:24-cv-120-BKS, D.I. 86 (N.D.N.Y. May 6, 2024)). The Witnesses' counsel also represents SUNY in the New York case. As SUNY has acknowledged, the "same" ownership and inventorship issues are being litigated in Delaware and New York. Ex. 4 at 5 (characterizing the Delaware and New York cases as focusing on "the same factual issues for resolution of the

2

same claims and defenses"). And this Court recently confirmed these allegations have merit, issuing a 62-page opinion on February 12, 2025, denying in its entirety Inpria's motion for partial judgment on the pleadings as to these issues. *Id.* at 2 (citing *Rsch. Found. for State Univ. of New York v. Inpria Corp.*, No. 1:24-CV-120 (BKS/ML), 2025 WL 472680, at *25, *18-22, *14, *24 (N.D.N.Y. Feb. 12, 2025)).

Lam served subpoenas on each of Dr. Brainard (March 26, 2025), Dr. Denbeaux (March 21, 2025), Mr. Del Re (May 8, 2025[1]), and SUNY (August 22, 2024 and March 11, 2025) seeking documents and testimony relevant to Lam's defenses and counterclaims regarding ownership, inventorship, and indemnity. Ex. 5, 20-22, 27. The subpoenas' document requests and the SUNY 30(b)(6) topics are narrowly tailored to Lam's defenses, requesting evidence such as laboratory notebooks regarding the patented technology (called "MORE") and communications with relevant parties and third parties. Ex. 5, Attachment A; Ex. 20 Attachment A; Ex. 21, Attachment A; Ex. 22 at Attachment A; Ex. 27 at Attachment A.

While SUNY has produced some documents, Dr. Brainard, Dr. Denbeaux, and Mr. Del Re have not yet complied with Lam's document requests. Ex. 6 at 1-2. And SUNY acknowledged that it still needed to collect documents that would "ensure a complete and fair record for all parties and factfinders in both Actions." Ex. 4 at 2. On the parties' meet-and-confers, counsel for the Witnesses indicated they were willing to cooperate with Lam's subpoenas but demanded that (1) the Witnesses' depositions in Delaware be coordinated with their depositions in the New York case such that each would only be deposed once; and (2) that Inpria provide SUNY with copies of

---

[1] This subpoena is substantively identical to one served on March 26, 2025 with the exception of an updated place of compliance. *Compare* Ex. 21 *with* Ex. 22. Should there be any concern about the May 8, 2025 service date, the Court could compel compliance with the March 26, 2025 subpoena and modify the subpoena to the correct compliance location as in the May 8, 2025 subpoena.

3

all documents, deposition transcripts, and briefing from the Delaware case under the Protective Order in New York. Ex. 7 at 1-2. Lam did not object to these requests. *Id.* However, Inpria refuses to coordinate deposition schedules or produce the Delaware documents to SUNY in the New York case. Ex. 8. As a result, the Witnesses are refusing to produce any additional documents or sit for deposition in response to Lam's subpoenas. Ex. 9.

On April 9, 2025, SUNY filed a motion seeking to file an amicus brief in the Delaware case asking the Delaware Court to dismiss or stay Inpria's lawsuit against Lam pending resolution of the New York case. Ex. 10. The Delaware Court granted SUNY's request, and SUNY's motion is currently pending. Ex. 11. On April 16, 2025, Lam filed a motion to dismiss the Delaware case, or in the alternative, sever, transfer, and stay the Delaware proceedings. Ex. 12. In addition to these motions, the Delaware court recently held a hearing on April 25, 2025 on Inpria's motion for a preliminary injunction against Lam, in which Lam raised the defenses regarding ownership, inventorship, and indemnity to demonstrate why Inpria is unlikely to succeed on the merits. Ex. 13; Ex. 17. An opinion is expected by June.

Recognizing the importance of these issues to the Delaware case, the Delaware court recently extended the fact discovery deadline to July 18, 2025 to, among other things, accommodate Lam obtaining this discovery from SUNY and witnesses such as Dr. Brainard, Dr. Denbeaux, Mr. Del Re. *See* Exs. 14-15 (amending schedule and noting that additional fact discovery includes "SUNY-related inventorship discovery").

On May 8, after numerous letters, emails, and calls on these issues, Inpria, SUNY, and Lam met and conferred to see if any compromise was possible without motion practice. The parties were unable to come to a resolution, and, despite its best efforts to the contrary, Lam is

4

forced to move to compel the Witnesses' compliance. Because fact discovery in Delaware closes on July 18, 2025, Lam needs the Witnesses to comply with Lam's subpoena now.

### III. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). This same standard applies to non-parties under Rule 45. *Malibu Media, LLC v. Doe*, No. 15-CV-3147 (AJN), 2016 WL 5478433, at *4 (S.D.N.Y. Sept. 29, 2016); *see also* Fed. R. Civ. P. 45 advisory committee notes regarding 1991 amendment (commenting that the Rule makes clear that a "non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"). Likewise, "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). A party may serve a subpoena commanding a non-party to "attend and testify" or to "produce designated documents." Fed. R. Civ. P. 45(a)(1)(A)(iii). A party may move to compel a response from a non-party who fails to comply with a subpoena. *Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC-BJM), 2009 WL 856392, at *2 (S.D.N.Y. Mar. 27, 2009) (citing Fed. R. Civ. P. 45(d)(2)(B)(i)). Discovery should generally be permitted unless it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Cross v. Donahoe*, No. 3:09-CV-1293 (TJM/DEP), 2012 WL 4911720, at *3 (N.D.N.Y. Oct. 15, 2012) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)).

## IV.     ARGUMENT

### A.     The Discovery Sought By Lam Is Highly Relevant To Its Defenses And Counterclaims Of Ownership, Inventorship, And Indemnity

None of the Witnesses can dispute that the discovery sought by Lam is highly relevant to Lam's defenses and counterclaims.  Starting with Dr. Brainard, SUNY listed Dr. Brainard in its N.D.N.Y. complaint as a sole or joint inventor of all of the patents Inpria asserts against Lam.  Ex. 3 at ¶¶ 748-56 ('684 patent), ¶¶ 937-45 ('505 patent), ¶¶ 1045-53 ('048 patent), ¶¶ 1153-56 ('564 patent), ¶¶ 1177-85 ('903 patent), ¶¶ 1338-46 ('153 patent), ¶¶ 1500-08 ('081 patent), ¶¶ 1554-57 ('312 patent).  Dr. Brainard led the work on key disclosures dating back to 2011 that show SUNY—not Inpria—came up with the claimed tin-based resists in every Asserted Patent.  *Id.* at ¶¶ 76, 164, 172, 192, 202, 290, 300, 313, 322, 348, 357; Ex. 2 at ¶¶ 172-73, 190-91.  Indeed, SUNY mentions Dr. Brainard 475 times in its operative complaint in the New York Case.  *See generally* Ex. 3.

Dr. Brainard is also listed as the principal investigator supporting the research done under the 2015 Research Agreement.  Ex. 16 at -938.  Almost all of the other purported inventors or co-inventors worked under the direction of Dr. Brainard.  *See, e.g.*, *id.* at -960-61.  The 2015 Research Agreement is central to Lam's case-dispositive defenses of ownership, inventorship, and indemnity, and was extensively cited in the Preliminary Injunction and Motion to Dismiss briefings in Delaware.  Ex. 2 at 22 (Eleventh and Thirteenth Defenses), Countercls. at ¶¶ 136-224, 239-246, 266-284; Ex. 17 at 13-19; Ex. 12 at 12-18.  Dr. Brainard is also central to several key factual disputes underlying Lam's defenses.  For example, a hotly contested issue is when Inpria first gained knowledge of SUNY's tin-based resists.  Both SUNY and Lam have alleged disclosures from SUNY to Inpria as early as 2012—disclosures which identify Dr. Brainard as an

author. Ex. 24. Dr. Brainard is also listed as an author on a key publication referenced for both anticipation and obviousness in Lam's invalidity contentions. Ex. 24.

Mr. Del Re is likewise highly relevant to Lam's defenses and counterclaims. SUNY listed Mr. Del Re in its N.D.N.Y. complaint as a sole or joint inventor of seven of the eight patents asserted by Inpria against Lam. Ex. 3 at ¶¶ 973-81 ('505 patent), ¶¶ 1081-89 ('048 patent), ¶¶ 1173-76 ('564 patent), ¶¶ 1213-21 ('903 patent), ¶¶ 1374-82 ('153 patent), ¶¶ 1536-44 ('081 patent), ¶¶ 1574-77 ('312 patent). Mr. Del Re is also listed as SUNY Personnel supporting the research done under the 2015 Research Agreement. Ex. 16 at -961. As noted, the 2015 Research Agreement is central to Lam's case-dispositive defenses of ownership, inventorship, and indemnity. *See* Ex. 2 at 22 (Eleventh and Thirteenth Defenses), Countercls. at ¶¶ 136-224, 239-246, 266-284; Ex. 17 at 13-19; Ex. 12 at 12-18. Mr. Del Re completed his Master's Thesis under Dr. Brainard, the project leader of tin-based resists at SUNY, on "Molecular organometallic resists of tin and tellurium." Ex. 26. Mr. Del Re is also listed as an author on a key publication referenced for both anticipation and obviousness in Lam's invalidity contentions. Ex. 24.

Dr. Denbeaux also is highly relevant to Lam's defenses and counterclaims. Dr. Denbeaux was a professor at SUNY Polytechnic Institute from 2003-2023. He worked alongside Dr. Brainard, who led the work on key disclosures dating back to 2011 that show SUNY came up with the claimed tin-based resists in every Asserted Patent. Dr. Denbeaux is also a co-author of papers with Dr. Brainard, Mr. Del Re, and other SUNY witnesses and purported inventors of the Asserted Patents. Ex. 25. Dr. Denbeaux is also listed as Committee Member involved with the work done under the 2015 Research Agreement between Inpria and SUNY. Ex. 3 at ¶ 474, Figure 114.

The same goes for discovery from SUNY itself. SUNY filed an over 400-page complaint asserting its scientists are sole or joint inventors of all of the patents asserted by Inpria against

7

Lam. *See, e.g.*, Ex. 3 at ¶¶ 748-56 ('684 patent), ¶¶ 937-45 ('505 patent), ¶¶ 1045-53 ('048 patent), ¶¶ 1153-56 ('564 patent), ¶¶ 1177-85 ('903 patent), ¶¶ 1338-46 ('153 patent), ¶¶ 1500-08 ('081 patent), ¶¶ 1554-57 ('312 patent). SUNY filed invention disclosures dating back to 2011 that Lam and SUNY assert show SUNY came up with the claimed tin-based resists in every Asserted Patent, and not Inpria. *Id.* at ¶¶ 76, 164, 172, 192, 202, 290, 300, 313, 322, 348, 357; Ex. 2 at ¶¶ 172-73, 190-91. SUNY is a party to the 2015 Research Agreement, which is central to Lam's case-dispositive defenses of ownership, inventorship, and indemnity. Ex. 2 at 22 (Eleventh and Thirteenth Defenses), Countercls. at ¶¶ 136-224, 239-246, 266-284; Ex. 17 at 13-19; Ex. 12 at 12-18. SUNY is also in possession and control of information that is hotly contested in the Delaware case, such as the disclosures SUNY made to Inpria regarding tin-based resists noted above. Ex. 3 at ¶ 174; Ex. 2 at ¶ 158. Testimony and documents surrounding what disclosures were made to Inpria, and when, are essential to Lam's defenses.

     Nor can the Witnesses dispute that the discovery sought is proportional to the needs of the case. Indeed, the Witnesses acknowledge that SUNY's New York case "substantially overlaps with the Delaware Action between Inpria and Lam," including claims of "ownership and correction of inventorship" as to "[a]ll eight of the patents asserted by Inpria against Lam in the Delaware Action." Ex. 4 at 1-2. And counsel for the Witnesses has asserted in the Delaware case that SUNY "is an owner of the patents asserted in this action" and "its researchers invented those patents." Ex. 18 at 1. There can be no doubt that the discovery is important to Lam's defenses in Delaware. Thus, the Court should grant Lam's motion to compel.

     **B.    Lam Has Taken Reasonable Steps To Avoid Imposing Undue Burden Or Expense On The Witnesses**

     Lam has taken reasonable steps to avoid imposing an undue burden or expense on the Witnesses. Lam's document subpoenas contain only twelve requests for individual witnesses and

fifteen requests to SUNY, and its deposition subpoena to SUNY contains only seventeen 30(b)(6) topics, each narrowly tailored to obtaining discovery on Lam's defenses. And Lam is willing to work with the Witnesses on timing of production and their depositions, so long as the discovery is obtained within the fact discovery period in the Delaware case. As explained below, there is nothing else that Lam can do to further minimize any burden or expense.

For months Lam has tried to broker compromise between SUNY and Inpria so that discovery can be taken in a cooperative fashion by all interested parties. As the Witnesses acknowledge, at least their counsel has been aware of the Delaware case for many months, and their counsel had conversations with Lam's counsel about the case in 2024. *See* Ex. 4 at 3-4. Lam and the Witnesses' counsel agree that "the same factual issues" and "the same claims and defenses" are at issue in the Delaware and New York actions, and, thus, it would be most efficient to coordinate discovery from SUNY witnesses across cases. *Id.* at 5. That is why Lam did not object to the Witnesses' request that (1) their depositions in Delaware be coordinated with their depositions in the New York case, such that each would only be deposed once; and (2) that Inpria provide SUNY with copies of all documents, deposition transcripts, and briefing from the Delaware action under the Protective Order in New York. Ex. 7 at 2. Lam likewise agreed with the Witnesses to extend the deadlines for any motions to quash or compel so that all parties could work toward agreement.

While Lam tried to avoid motion practice and agreed to postpone the filing of any motions until the Delaware court resolved pending motions, the situation unfortunately has become more urgent in light of Inpria's refusal to cooperate with Lam and SUNY in obtaining the discovery sought of the Witnesses, causing the Witnesses to refuse to appear. The close of fact discovery in the Delaware case is now less than two months away.

Inpria—not Lam—stands in the way of the coordination requested by the Witnesses and SUNY. Lam even offered to make the production requested by the Witnesses' counsel, but Inpria refused to consent. Because Inpria has refused to cooperate with the Witnesses' demands, Lam cannot continue to wait in the hope that Inpria will coordinate with enough time for the Witnesses and other SUNY researchers' depositions to be taken by July 18. Regardless, *Inpria's* resistance to cooperation is not a sufficient reason for the Witnesses to not comply with *Lam's* subpoenas. Lam has gone above and beyond its duty to take reasonable steps to avoid undue burden and expense on the Witnesses.

### C. The Subpoenas Do Not Impose Undue Burden Or Expense On The Witnesses

Lam's subpoenas do not impose any undue burden or expense on the Witnesses. Indeed, as the Witnesses' counsel acknowledged, the "same factual issues" and "the same claims and defenses" are at issue in the Delaware and New York cases. Ex. 4 at 5. Thus, the Witnesses will already have to collect the documents sought by Lam for the New York action. Indeed, discovery in the New York case is now open, and the Witnesses may have already done this collection. Ex. 6 at 4. Accordingly, Lam's subpoenas do not impose any additional burden or expense beyond which the Witnesses are already undertaking for the New York case. Likewise, while it is unfortunate that Inpria has refused to coordinate deposition scheduling, the Witnesses will already have to prepare for a deposition on the same issues for the New York case. While there is overlap, without Inpria's cooperation, depositions in the New York case will likely happen months after the July 18 fact discovery deadline in the Delaware case. Lam cannot wait that long; Lam would be severely prejudiced if the depositions do not occur until long after the close of fact discovery in the Delaware case. And aside from the Witnesses' desire to coordinate discovery across cases, they have made no showing of undue burden or expense in complying with Lam's subpoenas.

10

To the extent there was any undue burden or expense, beyond being deposed twice, it has now been alleviated. The Witnesses previously complained of tight timelines for compliance. *See* Ex. 4 at 3-6. But the Delaware court, at Lam's urging, extended the fact discovery deadline. Lam is amenable to agreeing to a convenient date and location for the depositions, so long as the depositions happen before the July 18 discovery cutoff in the Delaware case. To the extent there was not enough time for the Witnesses to comply with the original March and April 2025 subpoena compliance dates (or September 2024 in the case of SUNY's document subpoena), *see id.* at 3-4, it has been more than a month since those dates now, giving ample time to comply. The Witnesses also previously complained that they would not sit for depositions when the parties in the Delaware case had not yet been deposed. *See id.* at 3-4. But all such depositions are now complete. The Witnesses also made a jurisdictional argument about this discovery. *See id.* at 5. But SUNY and Lam have now raised this issue with the Delaware court. While those motions are pending, right now Lam's defenses remain part of the Delaware case and Lam is entitled to obtain this discovery. Fed. R. Civ. P. 26(b)(1).

The Witnesses will argue that they had not moved to quash the subpoenas because they relied on an agreement with Lam noted in the previous section, but that agreement has no bearing on any burden or expense imposed on the Witnesses from Lam's subpoena. The parties agreed to extend deadlines for motion practice, but there was no agreement that the Witnesses should refrain from gathering documents in response to the subpoenas. As noted, the Witnesses' counsel previously explained that discovery was "begin[ning] in earnest [in March 2025] between [SUNY] and Inpria in the Albany Action." Ex. 4 at 2. Their counsel further stated in March 2025 that within "a few months," SUNY could provide "additional document discovery from [SUNY] in the Delaware Action" to "ensure a complete and fair record for all parties and factfinders in both

11

Actions." *Id.* Thus, regardless of any agreement, SUNY and the Witnesses likely have been working in the interim to collect documents. And the parties agreed that motion practice would be wasteful when there was a perceived chance at compromise with Inpria. Inpria has now closed that door, and the July 18 fact discovery deadline in Delaware is fast approaching.

### D. The Witnesses' Failure To Comply With The Subpoenas Is Highly Prejudicial To Lam

Any slight inconvenience to the Witnesses from complying with their subpoenas does not outweigh the severe prejudice to Lam that would result from the Witnesses' non-compliance. There is no dispute that the Witnesses, SUNY researchers, unnamed inventors, and owners of the Asserted Patents, are key witnesses in support of Lam's ownership, inventorship, and indemnity defenses. *See, e.g.*, Ex. 3 (repeatedly citing Dr. Brainard and Mr. Del Re as a co-inventors of the Asserted Patents and relying on their research to show that SUNY is an owner). Without discovery and testimony from the Witnesses, Lam will face significant hurdles in demonstrating that SUNY is at least a co-owner and the SUNY Witnesses are unnamed co-inventors of the Asserted Patents. While it is unfortunate that Inpria will not coordinate discovery across cases, any slight burden on the Witnesses caused by Inpria's non-cooperation does not justify impeding Lam from obtaining discovery on its defenses and counterclaims, which are case dispositive.

## V. CONCLUSION

For the foregoing reasons, Lam respectfully requests that this Court compel Dr. Brainard, Dr. Denbeaux, Mr. Del Re, and SUNY to comply with Lam's subpoenas, including producing all outstanding documentary evidence and each sitting for a deposition.

Dated: May 19, 2025                                          Respectfully submitted,

                                                             /s/ Charles H. Sanders
                                                             Charles H. Sanders (No. 514696)

LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
Email: charles.sanders@lw.com

13